May it please the court. My name is Ben Nutley. I'm here representing Appellant David Murray. Good morning. Before we get started, I'd like to ask if I could reserve five minutes for rebuttal. Sure. We got the panel's homework assignment on Friday. And your answer is? Well, it was very intriguing because at first I thought, how can the panel think that this First Capital case is any kind of a match for the Lovatz case? I mean, really. But on reflection, it turns out that there's an interesting parallel, isn't there? If First Capital stands for the proposition that a class member who made money on the deal, had no injury in the case, fled, and then doesn't have standing because of it, isn't this case a kind of a nuclear First Capital where no class member has standing because we've said nobody was injured? The company never did anything that was cognizable, so therefore nobody had an injury? Isn't everybody like Mrs. Woolford in the First Capital case? That is your theory. There was no injury. Correct. Article 3 says to have standing, you must be aggrieved. That's right. If there's no injury, how can you be aggrieved? That's right. I believe the baseball term is no harm, no foul? Correct. Now, you're not aggrieved by the conduct of the defendant, B.W., in this case. When you're in an objection situation in a class action, when a class member comes, they may be claiming to be aggrieved by the defendant, or they may be claiming to be aggrieved by the plaintiff's lawyers who represented them. But there's no relief that we can enter that is going to benefit the objector. The sole issue here is whether or not money that B.W. has voluntarily agreed to pay through a settlement should be X dollars, Y dollars, or no dollars. However we were to rule on that issue, it isn't going to impact the objector one iota. And I'm having a very hard time understanding how he is aggrieved for Article 3 purposes in order to have standing to even raise this objection. Well, then, let me cheer you up about that. I can tell you how he's aggrieved. In a situation, let's step back. When you buy a car from Volkswagen, you have bought a durable good. You're going to have an ongoing relationship with that company. Whether you like it or not, some people always go to get their oil changed at the dealership. Some people try not to. This case is an interesting example. If you wanted a replacement sub-marquee, you have to find somebody who can do it. If there isn't an independent person near you who can do it, you will go to the dealership. So you may have to deal with Volkswagen again and again to purchase and consume goods and services. Maybe you've got a warranty. If Volkswagen for no reason is caused to pay money in a lawsuit where there was no reason, no rationale. Would that give that person opportunity or standing to intervene in any lawsuit against Volkswagen any place in the world out of concern that Volkswagen's costs might be increased? No. Then why is it uniquely here? Because they are class members in this case. But that doesn't speak to the issue we have in front of us. I share Judge Tallman's concern. I see zero relief or remedy available to your client in this case based on anything that we do based on the issues that you present to us. But if Volkswagen retains the money, and let me back up. No, no, no, no, no. Don't tell me if Volkswagen retains the money because that puts you right back in the quandary. Volkswagen gets sued in New York for $100 million. Much bigger effect on Volkswagen than this lawsuit. The fact that your client may be a subsequent customer of Volkswagen down the road, that doesn't give your client standing to get into Volkswagen's lawsuit there. I agree with that absolutely, Judge Clifton. If they're a subsequent customer, maybe down the road. If they're a current customer named as a class member in the lawsuit, though, what is being done in their name? And they are the client. As a client, and this is what I think the Lobatz case gets to, as a client, aren't you in the position to say when your lawyer comes back to you and says, you know, this case isn't working out like we thought. It really isn't. We don't have the facts we thought. But I'm going to hang out and try and see if I can't get a nice fee for myself. Don't you as the client say, whoa, whoa, wait a minute now. When I thought Volkswagen had done something wrong, that was one thing. That's a potential objection to the settlement, and that ship sailed. Now we're simply talking about the fees. Where does your client have a stake in that fight? Because they are class members and ongoing customers of this company. Howard, let me ask the same thing that my buddies here are asking in a different way. It seems to me you have a potential argument that if Volkswagen is willing to cough up $400,000 and it all goes to the lawyer, every dollar they get is one dollar you don't get. That's right. The problem is I don't see where you've raised that here on this appeal. Really important thing. Volkswagen didn't agree to that. They thought they had agreed to pay $25,000. It turns out that they have not. Okay, but that's Volkswagen's gripe. I don't see where you, you know, if you made that argument, I think you got a legitimate point that they've sucked out all the money and left you with a pamphlet, you know, about keys. But I don't see where you've developed that in this appeal. It was raised at some earlier stage that may have been appealed previously and was dumped. But interestingly, the objection is not so much to the settlement itself, which is really ships passing the night. Well, it can't be the settlement itself because you did object, you appealed, and then dismissed the appeal. Correct. Okay. And quite intentionally because we thought... With prejudice. Yes. And because the harm in this case, this case is unusual. Harm is not the settlement. And this is not a situation where the defendant sold out, you know, colluded with the plaintiff's lawyer and sold out the class, which is sort of the common theme you see. Well, there's nothing, under your theory, there's nothing to sell out because there was never any injury to be made. Correct. Correct. The injury is... So basically what you're complaining about is the fact that Volkswagen, out of the goodness of its heart, has decided to pay $400,000 in legal fees and your client objects. Well, so what? So what? Because they are the titular, or at least the ostensible clients of these lawyers who... But First Capital says merely being a member of the class does not mean that he is aggrieved within the meaning of Article 3. Correct. So now you are foundering on the shoals of First Capital Holdings Corporation that squarely says, no standing. I think not, because First Capital says... Let's ask, what about the representative plaintiff? What if he... It was his responsibility to control the lawyers primarily. Let's say he said to these lawyers, look, I'm not comfortable with the idea that Volkswagen hasn't done anything, but we're still going to proceed against them. And the lawyer said, I'm not listening to you. I'm going to go ahead anyway. Would he have no standing in this situation to challenge the fee and to say, I disagree with this, because after all, he made $2,500. He made a profit on this more than anybody else. Are we saying now that the representative plaintiff himself doesn't have standing to challenge his own... You have standing to challenge the settlement. You did in fact challenge the settlement. You didn't like the ruling. You appealed it and then you dismissed the appeal. That's right, because we had no... The fee is the real harm when there was no fee award to go with it. And again, let me just, to reiterate, Volkswagen agreed to have the judge set the fee. Volkswagen didn't agree to say in its mind, this is worth $400,000 to us and then some. Volkswagen said, we think the judge will set a fair fee. If the judge doesn't and somebody says, gosh, that's an unfair result, and that's going to hurt me, I'm a class member. Why does it hurt you as a class member? Because if I have to go get a smart key and Volkswagen has decided to charge $5 more to cover the cost of this litigation... That goes right back to the question I asked before. Your client does not have standing to object to something that might cost Volkswagen out of concern that Volkswagen might later charge more money for something. Haven't they? Aren't they in privity with Volkswagen? No. You tell me. You tell me. How are they in privity? Well, they purchased their car from Volkswagen, right? They own this car. This car they didn't purchase a future car. I'm sorry? They didn't purchase a future car. No, true, but they... If your theory is right, why doesn't your client have standing in every case involving Volkswagen as a defendant? Because Volkswagen's exposed to potential loss that might affect what your client is charged in the future. Because they wouldn't necessarily be named as a class member in that suit. Your notion that class member helps you just baffles me. Judge Tolman's already pointed out, class member doesn't do it. And you haven't told us why class member should. Well, class member doesn't do it alone, but it's the first step. Why? What does that have to do with your client's investment, stake, standing in this case? Where does your client have any skin in the game? The client has skin in the game because if there is a breach of the professional responsibilities by the lawyers who pursue a fee that they shouldn't pursue... Then call the state bar. I'm not sure that's always a... The state bar has a different purpose. Go back to first principles. Go back to Lujan. How does your client have Article III standing under Lujan? Well, this isn't a person who's saying, gee, I'm just a member of the general public and I don't like what I see here. Why isn't he? Because they have an economic relationship with the defendant. So does every purchaser of Volkswagens. Correct, but not every purchaser of a Volkswagen is named in a class action. Your client wasn't named in this action. I mean, not named, but named as an absent class member included in a class. But class member isn't enough by itself. I still haven't heard anything that suggests any real interest of your client in the proceeding before us today. I think that the interest in controlling the conduct of the attorneys who purported to represent them is an interest that is recognized. Before I go back, why isn't the state bar better equipped to do that? Why do we say every absent class member is entitled to come in and assert his own personal ethical standards? Is that enough for standing? No. Is there any authority that supports that proposition? No, not own personal ethical standards, but you can assert ethical standards that are recognized in the court. I gave you a standing theory that they siphoned off all the money that should have gone to the class. But the problem with that is you didn't assert that. Yes, it's unassertable. Okay. I guess you wanted to reserve some time. Yes, thank you for reminding me. Three and a half minutes left. Thanks. Good morning. Good morning. We have placed in court Jordan Lurie, Weiss and Lurie for plaintiff, the class, and the appellee. Respectfully, Your Honors, the appellant has failed to adequately answer the fundamental questions raised by this appeal, as this panel has indicated by its questioning. How has the objector been injured in this case, and how can a decision by this court redress his injury? And the answer is that the objector has not been injured at all by the order. And under the circumstance of this case, there's no decision of this court that can actually benefit the objector. And the evidence for the argument supported in this argument is compelling, Your Honors. As the panel has acknowledged, the objector has conceded that the underlying settlement is fair, adequate, and reasonable. He objected to the settlement, and he dismissed his appeal with prejudice. He's not seeking a portion of the fee award. He's not seeking to redistribute the fee award. He admits in his reply brief, I think tellingly, and he's admitted here in oral argument, that the only financial benefit would be to Volkswagen. The sole purpose of this appeal, Your Honor, is to take a fee out of plaintiff counsel's pocket. And respectfully, that is not grounds for standing in this case. A general interest in how class actions are conducted does not give grounds to standing in this case. As this court has indicated in other cases, it's cases that the court addresses, not crusades. So simply, there is no basis for standing in this case. The Lobatz opinion, and this would be clear on the first capital, as I think the panel has seemed to indicate by its question. There simply is no basis for standing. I could make strong arguments on behalf of the appellant. But to the extent that, for example, Lobatz, as the court has indicated, might purport to give some grounds, meaning to say that if there's a collusion argument to be made, somehow that collusion argument could give grounds to standing. In this case, there simply has been no argument, and the appellant has admitted now, his papers admitted and now he's admitted, that there never was any such argument made. It's not right for a decision in this court with respect to whether there's even been a collusion argument.  And even if it could, the circumstances of this case would contradict that fact pattern. There is absolutely no evidence here. No foundational showing. In fact, no possibility of collusion in this case. In this case, the fee was disputed. We had to go to the court to get a fee. The fee had to be litigated. Unlike in Lobatz, where there was an agreement on the fee, there was no such agreement here. Did the class members get notice of the settlement, including the fee application? Yes. So they're entitled to notice, and I presume then they are also entitled to object? Correct. And if they don't like the ruling, are they entitled to appeal? Yes. So what is their standing at that point? At which point, Your Honor? The point where they appeal the overruling of their objection. The objection to which part, the settlement? The settlement. I just asked you. You send them notice of the settlement, including the fee application. You said yes. I said, do they have the right to object? You said yes. I said, do they have the right to appeal? And you said yes. And then I said, what's their standing to appeal at that point? The underlying class members? Yes. The people who you've sent notice to and have invited objections. If the underlying class members felt that the settlement was an unfair settlement, unreasonable or what have you, they would be entitled to appeal? Including the fee. At that time, yes. They would be entitled to appeal the fee. Now, the judge approved the settlement, but specifically carved out the fee. Correct. The fee amount. So why can't they then appeal the fee amount? She specifically carved that out. Okay. Two arguments with respect to that, Your Honor. First of all, it's still well-settled law under First Capital that the appeal has to be an injury redressable by the appeal. There is no injury that can be redressed on an appeal where the appellant only seeks to take fee out of counsel's pocket. There simply is no injury. We've just argued that. With respect to an entitlement to a fee, if there were such an entitlement, that issue was decided at the time that the court determined whether the settlement was fair, adequate and reasonable. And I think this is an important point, especially as it goes to the merits of the court's determination of the actual fee award. It's clear from the record that when the court determined the settlement, that the settlement was fair, adequate and reasonable, it also determined at that time that plaintiffs were entitled to a fee. And that's clear from the conduct of the action in the district court. The appellant, in this case the objector, appealed based on the fact that that plaintiff was not entitled to a fee. The court considered the objection. The court overruled the objection. If a class member, or in this case the objector, claims that that was an incorrect determination, that should have been taken up, as it was in fact taken up in this case, on appeal of the fee approval order. In this case, that's what the appellant originally did. He acknowledged, and I think correctly at that time, that he should appeal the fee approval order. That's the order in which... What's the date of that order? I believe it's October 6, 2008. Okay. Paragraph 15 of that says, The court will separately rule and enter judgment on the issue of attorney's fees, costs, interest, inexpensive and incentive award. Correct, Your Honor. Sounds like he hasn't ruled on it then. Yes. From my understanding of that, Your Honor, two responses. First, in that order, the court was determining the amount of the fee. Because the entitlement to a fee had been determined in connection with the fee approval order. And the proof for that is that the objector himself had challenged the entitlement to the fee at that time. The court considered the objection. The court overruled the objection. The court looked at the determination in the settlement agreement that the plaintiff should be entitled to a fee. Chief Judge Collins considered the terms of the settlement at that time. She considered the objection, and she determined that we were entitled to a fee. So when she says the court will separately rule on the issues of attorney's fees, what do you think that means? My understanding of that is, Your Honor, that she was determining on the amount of the fee. It doesn't say the amount of the fee. It doesn't say that, Your Honor, but it's clear from the circumstances that she had already determined the entitlement to the fee. She also uses the plural. The court will separately rule and enter judgment on the issues of attorney's fees, costs. I think those issues probably refer to the issue of the lodestar, whether there should be an enhancement. There were issues about the fee. Maybe not. Maybe not, Your Honor, but even if we assume that argument, we have to go back to the basic standing issue in this case. If the only issue here is challenging the fee that's awarded, this objector does not have standing to challenge that order. Let me come at this a slightly different way to complicate this further. Suppose that Mr. Murray had not dismissed his first appeal with prejudice and had instead filed an amended notice of appeal after Judge Collins determined the amount of the fee. Would he have standing if he were in that procedural posture here today? I think that's a much closer question, Your Honor. I know it's a hard question to give an answer for. Yes, I will answer it. I think that in this case, the appellant made a tactical error. That's correct. That tactical error dooms this appeal. But if you're asking me from a theoretical point of view what should have happened, if I were the appellant or if this was to be properly appealed and to put this issue before the court, I would have not dismissed the underlying fee approval appeal. I would have kept that issue alive or amended it, as Judge Coleman suggests, because only under that circumstance, where you have the fee order appeal and the settlement order appeal both alive together, can you possibly argue that there would be some collusion? And can you possibly argue under Lobatz that you could possibly move some money from the fee back into the settlement? Once you foreclosed the settlement, that issue is decided, dead. It's no longer on appeal. There is nothing that can be done by this court with respect to that attorney's fee, and therefore, the appellant doesn't have any standing. So the only way I think, Judge Coleman, in response to that is to somehow keep that issue alive. If you don't, you foreclose the option to act on it. The only thing that bothers me about agreeing with the conclusion that you just suggested is we still have an Article III aggrieved problem. Assuming that he had preserved his procedural right to appeal, I'm still wondering what relief we could afford him today that would redress any injury that he can claim. I think we're right back to the problem of first capital. Because the normal, where you have a common fund, it's much easier to make the argument that paying money out of the fund to the attorneys deprives the class of a proportionate share of the common fund. Here, there is no common fund. And by objector's own admission, there was never any basis for the lawsuit to begin with, no injury. And therefore, I still think we'd have to dismiss for lack of standing, given the facts of this case, as I read the law of the Ninth Circuit. I agree with you 100%. You're asking me, under what possible circumstances, what would I have done if I had been the appellant in this case? I think, ultimately, the decision would still be the same. There would be no standing. But the only way you could even get close to this being an arguable appeal is to have kept that open. I agree with you. And there would have been no standing, no matter what the appellant did in this particular case. If you ask me, how close can you get, what could he have done under the circumstance to make this within the, to get in the arena, that's probably what he should have done and he didn't do. Would the Court like me to address any of the issues on the underlying merits of the claim? Are there any other issues? I have four minutes. I'd like to reserve it for a moment. I think the case stands or falls on this issue. I think, Mr. Lurie, that's, you've got it. Thank you very much. You've answered our question. Thank you, Your Honor. Mr. Nutley, back to you. May I have to rebuttal if the Court would permit? No, we don't do that here. Thank you. Thank you, Your Honor. Thank you, Your Honors. I heard Mr. Lurie say that if we had just kept on the appeal, we'd be fine because without an appeal on the merits, the first merits. That's not what he said. I threw him a lifeline. Well, not fine, not fine. I threw him a lifeline. We'd be finer. He took it. Okay, fair enough. Okay, it gets you here. Fair enough. The question is, would you survive? We wouldn't be fine, but he says we'd be finer because his theory is you must have appealed the settlement in order to appeal the fee. That's not true. Lobatz says that's not true. And Lobatz, they failed. They filed late on their settlement. They missed the boat on the settlement appeal. They appealed the fee, and that was the whole issue in Lobatz. Could they still appeal? Now, I agree. It doesn't necessarily touch on the problem that you're having, Judge Tallman. But the notion that if you're only seeking to take money out of the plaintiff's lawyer's pocket, that's not appropriate. That's not true. But in Lobatz, I think it's distinguishable because of the fact that there was a legitimate underlying claim there. In other words, there was an injury that members of the class had suffered. We came up with this constructive common fund theory in order to preserve standing. But your situation is different because of the fact that you maintain there was never a wrong to begin with. Therefore, there is no harm that the court can address for any member of the class. But don't we end up in a situation then with the exception of, say, the state bar of saying, then craft your class action in any event. If you run into a problem, the worse the case, in essence, and the worse the relief, where it's so bad off that you can't even come in and say, this ought to have been a better settlement, then that insulates you against any redress by the class you purported to be. Well, then opt out of the class. You don't have to opt out of the class. You don't have to be in the class if this offends you. Well, but that doesn't save you from having Volkswagen have to pay over money. Well, that's Volkswagen's problem. Volkswagen's big boys. They can do their Fargan Nugent or whatever they do. They don't want to pay the money. They don't want to pay the money. That's their hassle. I guess that's true. It is, but that doesn't mean it's nobody else's hassle, right? Why not? Why doesn't it mean it's nobody else's hassle? If the only money comes from Volkswagen, what makes it your client's hassle? And the only thing I can repeat is they used my name, not mine personally, my client's name, claim, even if it wasn't a claim, to go and do this thing which was not in the public interest and which, as a person who deals with that company on an ongoing basis, you have an interest in saying, I don't agree with that. That's going to hurt me, maybe even a little. It may be even a tiny, tiny bit, but that's enough. That's enough for me to say, whoa, like my lawyer. What makes that enough legally? Why isn't a letter to Volkswagen all your client can do? I'm sorry, a letter to Volkswagen? Your client can send a letter to Volkswagen and say, don't make this settlement. I want to pay the extra money in the future. What legally gives your client any standing in court just because your client doesn't like what Volkswagen agreed to? Well, because they couldn't send a letter before because the settlement gets done and then people get noticed. You can always send a letter. You don't need our permission. You don't need standing to send a letter. Sir, what I'm asking for is you're offering up theoretical interests of your client, but I haven't seen anything connected to something that constitutes Article III standing. That, I think, is perhaps a matter of perspective because I think it is different. I think it is somebody who has an interest that is more than a member of the general public. Is it a direct financial interest where you're going to get charged for this? No. Well, then that may be the problem for Article III standing. Okay. Thank you, gentlemen. Thank you. The case is submitted.
judges: Silverman, Tallman, Clifton